# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, on behalf of its members; and ZACH HILLESHEIM, <br><br> *Plaintiffs,* <br><br> v. <br><br> KAH 20 2ND AVENUE LLC, and KAHLER HOTELS LLC, <br><br> *Defendants.* | Case No. _____ <br><br><br> **COMPLAINT** <br><br> **Injunctive Relief Sought** |

Plaintiffs Disability Support Alliance and Zach Hillesheim, by and through the undersigned counsel, bring this action against KAH 20 2nd Avenue LLC , a Delaware limited liability company, and Kahler Hotels LLC a Delaware limited liability company, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, for violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A (the "MHRA"), and for the commission of a Bias Offense, Minn. Stat. § 611A.79, and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this civil rights action against Defendants for failing to design, construct, and/or own or operate facilities that are fully acces-

sible to, and independently usable by, persons with disabilities. Defendants have failed to remove architectural barriers in the hotel known as "Kahler Grand Hotel", even though such removal is readily achievable.

2.     The violations alleged in this complaint occurred at "Kahler Grand Hotel", located at 20 SW 2nd Avenue, Rochester, MN 55902.

3.     Defendants' failure to provide equal access to "Kahler Grand Hotel" violates the mandates of the ADA and the MHRA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

4.     Defendants' conduct constitutes an ongoing and continuous violation of the law.

5.     Accordingly, Plaintiffs seek a declaration that Defendants' facilities violate federal and state law and an injunction requiring Defendants to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiffs further request that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA and MHRA.

## JURISDICTION AND VENUE

6.     Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court may exercise supplemental jurisdiction over Plaintiffs' nonfederal law causes of action, violations of the Minnesota Human Rights Act, Minn. Stat.

Chapter 363A, and the Minnesota Bias Offense statutes, Minn. Stat. Chapter 611A.79, because the claims asserted in this action arise from a common nucleus of operative fact. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

7.     Venue in this judicial district is proper because Defendants transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

8.     Plaintiff Disability Support Alliance is a Minnesota nonprofit corporation organized under Chapter 317A of the Minnesota Statutes. Each member of the Disability Support Alliance is a person with a disability who is recognized as a protected class under federal and state law. The purpose of the Disability Support Alliance is to "eliminate discrimination on the basis of disability" and "promote the betterment of the lives of those living with disabilities." Disability Support Alliance's members have long been actively promoting the Disability Support Alliance's organizational mission in their individual capacities and are continuing their efforts through the Disability Support Alliance. Disability Support Alliance's members live in Minnesota.

9.     Plaintiff Zach Hillesheim is a resident of the city of Marshall, Minnesota. Plaintiff Hillesheim suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2), and as defined by the MHRA, Minn. Stat. 363A.03, Subd. 12. Plain-

tiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 et seq., and under the MHRA.

10.    Plaintiff Hillesheim was paralyzed as an infant while undergoing surgery to address a congenital heart defect. During the surgery his spine was severed, paralyzing him below the waist. Mr. Hillesheim cannot walk and uses a wheelchair for mobility. As a person with a disability, Mr. Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11.    Defendant KAH 20 2nd Avenue LLC is a Delaware limited liability company and is the owner and lessor of the real property and improvements which are the subject of this action, the hotel known as "Kahler Grand Hotel", a place of public accommodation within the meaning of the ADA and MHRA, located at the street address of 20 SW 2nd Avenue, Rochester, MN 55902.

12.    Defendant Kahler Hotels LLC is a Delaware limited liability company with its principal place of business at 20 SW 2nd Avenue, Rochester, MN 55902. Kahler Hotels LLC is the operator and lessee of the real property and improvements which are the subject of this action, the hotel, "Kahler Grand Hotel", a place of public accommodation within the meaning of the ADA and MHRA, located at the street address of 20 SW 2nd Avenue, Rochester, MN 55902.

## FACTUAL BACKGROUND

13.    On or around February 16, 2015, Plaintiff Hillesheim booked an accessible room by telephone with "Kahler Grand Hotel" for the week of March 2, 2015. Plaintiff Hillesheim had arranged a medical procedure at the Mayo Clinic and was planning to travel with another member of the Disability Support Alliance. Hillesheim and his traveling companion both used wheelchairs and required an accessible room.

14.    Plaintiff Hillesheim was interested in booking a room at "Kahler Grand Hotel" because of its close historical relationship with the Mayo Clinic. Plaintiff Hillesheim also found the hotel's restaurants and the direct subway pedestrian connection to the Mayo Clinic convenient, especially considering the difficulty wheelchair users face outdoors in the winter. The "Kahler Grand Hotel" website stated that the hotel had 660 guest rooms available, indicating the potential for a large number of accessible rooms

15.    Plaintiff Hillesheim called the Kahler Grand Hotel to inquire about a reservation. On the phone, the representative for "Kahler Grand Hotel" informed Plaintiff Hillesheim that accessible rooms were more expensive due to the cost of installing grab bars. The Kahler representative informed Plaintiff Hillesheim that accessible hotel rooms he was interested in were more expensive than the inaccessible rooms.

16.    Plaintiff Hillesheim also researched "Kahler Grand Hotel" prices on the Booking.com website, and found that the least expensive accessible room was $20 more expensive than the least expensive inaccessible room type and $10 more expensive than the next less expensive inaccessible room type.

Plaintiff Hillesheim booked his room through the website Booking.com. Exhibit A to the Complaint shows a screenshot of what Plaintiff Hillesheim saw while reserving the room on Booking.com.

17.     On March 2, 2015, Plaintiff Hillesheim and his traveling companion arrived in Rochester at the "Kahler Grand Hotel", registered, and went to their accessible room, room number 807.

18.     In their room, Plaintiff Hillesheim noticed several architectural barriers that prevented the room from being fully accessible.

19.     The door of the room lacked an accessible peephole. The peephole was at an appropriate height for someone standing, but Plaintiff Hillesheim could not use it from his wheelchair. The photograph in Exhibit B to this Complaint shows the peephole on the hotel room door.

20.     Much of the shelving in the room intended for storing luggage was positioned too high to allow Plaintiff Hillesheim easy access from a wheelchair. A heavy armchair blocked the lower-positioned, accessible shelving. The photograph in Exhibit C to this Complaint shows the armchair blocking the accessible shelving.

21.     The bed was positioned approximately eighteen inches from the wall, providing a space too narrow for a wheelchair to access the side of the bed close to the wall. This rendered only one side of the bed accessible and the outlets against that wall unreachable, a great inconvenience to Plaintiff Hillesheim and his traveling companion, because they both used wheelchairs. The photograph in Exhibit D to this Complaint shows the narrow space between the bed and the wall.

22.     Plaintiff Hillesheim discovered that the bathroom door opened inward, blocking access to the accessible tub. Plaintiff Hillesheim would not have been able to make a safe transfer from his wheelchair to the tub and take a bath due to the space constraints of the bathroom and his wheelchair. Exhibit E to this Complaint shows a photograph of the door swung into the bathroom and blocking the bathtub and a photograph of the door blocking Plaintiff Hillesheim's ability to access the bathtub.

23.     The thermostat, curtain controls, and iron were all positioned too high for people who use wheelchairs and cannot stand. The photographs in Exhibit F to this Complaint show the thermostat and iron in the accessible room.

24.     The desk staff attempted to offer Plaintiff Hillesheim alternative rooms, but because these rooms did not have accessible bathrooms, they were not acceptable alternatives.

25.     Due to the numerous barriers to accessibility, Plaintiff Hillesheim cancelled his reservation and found a different hotel in Rochester.

26.     In light of the architectural barriers at "Kahler Grand Hotel", Plaintiff Hillesheim and other members of the Disability Support Alliance are deterred from visiting "Kahler Grand Hotel" in the future. Plaintiff Hillesheim and other Disability Support Alliance members intend to return to "Kahler Grand Hotel" to patronize the facility, but these architectural barriers deter them from doing so. They plan to return and patronize "Kahler Grand Hotel" when they learn that the premises have been made fully accessible to persons who use wheelchairs for mobility.

27.     Plaintiff Hillesheim attempted to access Defendants' premises, but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA and MHRA that exist at Defendants' premises. As a result of Defendants' non-compliance with the ADA and MHRA, Plaintiff Hillesheim and members of the Disability Support Alliance cannot independently access the facilities and/or are excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

28.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, in-

stitutionalization, health services, voting, and access to public services;

d. Individuals with disabilities continually encounter various forms of discrimination; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

29. Congress explicitly stated that the purpose of the ADA was to:

a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

30. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public ac-

commodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

31.   The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

32.   Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

33.   In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

34.     In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rule-making to update and revise the 1991 ADAAG.

35.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

36.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

37.     On June 17, 2008, the DOJ published a notice of proposed rule-making covering Title III of the ADA.

38.     The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

39.     Defendants have discriminated against Plaintiff Hillesheim and members of the Disability Support Alliance on the basis of their disabilities by failing to comply with the requirements of the ADA, the ADAAG, and the MHRA with regard to "Kahler Grand Hotel". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "Kahler Grand Hotel" which limit the ability of persons in wheelchairs to access the

facilities and/or to enjoy the goods, services, privileges, advantages and/or ac-
commodations offered therein on a full and equal basis, includes the follow-
ing:

    a. "Kahler Grand Hotel" was required to have at least 19 accessible
        guest rooms but did not offer accessible rooms that were equiva-
        lent to the lowest-priced options for inaccessible rooms (economy
        and efficiency), or any rooms with queen or king beds, in violation
        of ADAAG 224.5 and ADAAG Advisory 224.5.

    b. The accessible room Plaintiff Hillesheim rented at "Kahler Grand
        Hotel" had a bathroom door that opened inward into the bath-
        room, obstructing the clearance in front of the bathtub and pre-
        venting a safe transfer to the tub, in violation of ADAAG 806.2.4,
        603.2.3, and 607.2.

    c. The accessible shelving in the accessible room offered to Plaintiff
        Hillesheim at "Kahler Grand Hotel" was obstructed by a heavy
        armchair, in violation of ADAAG 225.2 and 308.

    d. In the accessible room offered to Plaintiff Hillesheim at "Kahler
        Grand Hotel", the peephole on the door intended to allow guests
        to identify visitors was located approximately five feet above the
        ground, rendering it inaccessible to people in wheelchairs, in vio-
        lation of ADAAG 205.1.

    e. The bed provided by "Kahler Grand Hotel" was positioned ap-
        proximately eighteen inches from the wall, which provided insuf-

ficient clear space on that side of the bed to meet the 30-inch requirement, in violation of ADAAG 806.2.3 and 305.

f.  The accessible hotel room at "Kahler Grand Hotel" lacked accessible living area features and operable parts such as the thermostat, and the curtain controls, in violation of ADAAG 205.1.

40.  The above listing is not to be considered all-inclusive of the barriers and violations of the ADA and MHRA encountered by Plaintiffs or which exist at "Kahler Grand Hotel".

41.  In order to fully remedy the discriminatory conditions, Plaintiffs require an inspection of "Kahler Grand Hotel" in order to photograph and measure all such barriers to access and violations of the ADA, ADAAG, and MHRA.

42.  Compliance with the ADA standards, the ADAAG, and the MHRA is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards, the ADAAG, and the MHRA is readily achievable by Defendants due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, rearranging tables, chairs, and other furniture. 28 C.F.R. § 36.304(b).

43.  Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees

or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

44.    As a person with a disability, Plaintiff Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein. As an organization devoted to reducing discrimination against persons with disabilities, and whose members have been directly impacted by the discriminatory conditions at "Kahler Grand Hotel", Disability Support Alliance has an interest in remediating the barriers at the subject premises.

45.    Without injunctive relief, Defendants' failure to remove accessibility barriers will continue to cause injury to Plaintiffs, who will continue to be unable to independently access "Kahler Grand Hotel" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of their rights under the ADA and MHRA.

## FIRST CAUSE OF ACTION
## Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

46.     Plaintiffs incorporate and reallege the above paragraphs.

47.     Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

48.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

49.     Defendants have discriminated against Plaintiffs and others in that they failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Hillesheim and Disability Support Alliance members have been denied full and equal access to "Kahler Grand Hotel" and/or have been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

- 15 -

50.     Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the ADA and ADAAG are ongoing.

51.     Defendants have failed to remove architectural barriers to full and equal access by Plaintiff Hillesheim and other members of Disability Support Alliance, even though removing the barriers is readily achievable.

52.     Plaintiff Hillesheim and other members of Disability Support Alliance plan to visit "Kahler Grand Hotel" again in the near future. Plaintiffs are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm upon their planned return visit to "Kahler Grand Hotel" unless and until Defendants are required to remove the physical barriers to access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

53.     This Court has authority under 42 U.S.C. § 12188 to grant Plaintiffs injunctive relief, including an order requiring Defendants to make "Kahler Grand Hotel" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Kahler Grand Hotel" until such time as Defendants cure the access barriers.

54.     Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

## SECOND CAUSE OF ACTION
## Violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A

55.     Plaintiffs incorporate and reallege the above paragraphs.

56.     Minn. Stat. 363A.11 provides:

It is an unfair discriminatory practice:

(1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of […] disability […]; or

(2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

57.     Under the general prohibitions established by the MHRA, Minn. Stat. 363A.11, Subd. 2, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

58.     Defendants have engaged in unfair discriminatory practices against Plaintiffs and others in that they have failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis. The acts herein constitute violations of the MHRA, 363A.11. Plaintiffs have been denied full and equal access to "Kahler Grand Hotel", and/or have been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations offered therein on a full and equal basis.

59.    Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the MHRA are ongoing.

60.    Defendants have failed to remove architectural barriers to full and equal access by Plaintiffs and other persons with disabilities, even though removing the architectural barriers is readily achievable.

61.    Plaintiff Hillesheim and other members of Disability Support Alliance are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm upon their planned return visit to "Kahler Grand Hotel", unless and until Defendants are required to remove the physical barriers to access and MHRA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

62.    This Court has authority under Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3–4, to issue an order directing Defendants to cease and desist from their unfair discriminatory practices and to take affirmative action to make their facilities readily accessible to and independently usable by individuals with disabilities. The Court furthermore has authority under these statutory provisions of the MHRA to order Defendants to pay a civil penalty to the state.

63.    Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees from Defendants as part of the costs, pursuant to Minn. Stat. 363A.33, Subd. 7.

## THIRD CAUSE OF ACTION
### Civil Damages for Bias Offenses

64.     Plaintiffs incorporate and reallege the above paragraphs. Defendants have committed an unfair discriminatory act as set forth in section 363A.11 of the Minnesota Statutes.

65.     Section 363A.30 of the Minnesota Statutes provides that any person who commits an unfair discriminatory act under section 363A.11 of the Minnesota Statutes shall be guilty of a misdemeanor.

66.     Section 611A.79 of the Minnesota Statutes provides a person who is damaged by a bias offense has a civil cause of action against the person who committed the offense.

67.     Defendants committed a bias offense against Plaintiffs by violating the MHRA's public accommodation provisions and by discriminating against Plaintiffs on the basis of their respective disabilities.

**WHEREFORE**, Plaintiffs respectfully request:

   a. That the Court issue a Declaratory Judgment that determines that Defendants' facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG, and that Defendants' conduct and/or inaction constitutes an unfair discriminatory practice under the MHRA.

   b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. 363A.33,

Subd. 6, and Minn. Stat. 363A.29, Subd. 3, enjoining Defendants from continuing their discriminatory practices; including an order directing Defendants to make all readily achievable alterations to their facilities so as to remove physical barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and the MHRA; and also including an order requiring Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

c.  That the Court order Defendants to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4.

d.  That the Court award Plaintiffs damages, to be paid by Defendants pursuant to Minn. Stat. 363A.33, Subd. 6, Minn. Stat. 363A.29, Subd. 4 and Minn. Stat. 611A.79, Subd. 2.

e.  That the Court award Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise provided by law; and

f.  That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA or the MHRA.

DATED:  March 13, 2015

/s/ Paul Hansmeier
Paul R. Hansmeier (MN Bar # 387795)
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 326-9801